IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES DIVISION/IBT, <br> 41475 Gardenbrook Road <br> Novi, MI 48375 <br><br> *Plaintiff*, <br><br> v. <br><br> FEDERAL RAILROAD ADMINISTRATION <br> 1200 New Jersey Avenue, SE <br> Washington, D.C. 20590, <br><br> *Defendant.* | Case No.: 1:18-cv-2790 |

## **COMPLAINT**

The Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED") brings this Complaint against the Federal Railroad Administration ("FRA", or "Agency"), for a declaratory order that the FRA's suspension of a Federal railroad Track Safety Standard ("TSS") regulation setting requirements requiring certain frequencies of track inspections on a portion of BNSF Railway ("BNSF") was arbitrary, capricious, and not supported by substantial evidence, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §706.

On November 5, 2018, the FRA issued a Notice that made public the Agency's September 26, 2018 decision to suspend a TSS track inspection frequency requirement by reducing the frequency of manual visual inspections by Track Inspectors in connection with the agency's approval of a BNSF proposal to test various types of automated track inspection technologies. According to the Notice, the TSS for frequency of visual track inspections was

suspended under 49 C.F.R. 211.51 which, allows suspension of a safety regulation in order to conduct a test, provided, among other things, that suspension of the regulation is "necessary" to performance of the test, and the test is subject to conditions that would assure safety. The FRA's Notice stated that the Agency found that suspension of the regulation on frequency of track inspections was necessary to conduct of the test, and that the test would be conditioned to assure safety. Neither statement was supported by evidence or explanation. In fact, the suspension of the regulation of frequency of inspections is not necessary to conduct of the test and the test was not subject to conditions to assure safety. Accordingly, the FRA's action was arbitrary, capricious and not supported by substantial evidence, in violation of the APA.

BMWED has petitioned the FRA for reconsideration of its action, but the petition will not stay the test, the BNSF has begun the test, and on around January 1. 2019 BNSF will begin to reduce the frequency of manual visual track inspections on the rail lines covered by the test.

## **PARTIES**

1. BMWED represents maintenance of way employees of the Class I and other rail carriers in the United States who are responsible for constructing, repairing, rehabilitating, upgrading, renewing, inspecting and maintaining those carriers' track and rights of way, as well as bridges, buildings, and other structures. In particular, BMWED represents BNSF's maintenance of way employees including its track inspectors who perform the work of FRA mandated TSS track inspections.

2. BMWED is actively involved in helping to create and maintain a safe workplace for its members; and to reduce and eliminate accidents, incidents, injuries and

deaths, as well as property damage affecting its members and the public. BMWED's members inspect and work on railroad lines and rights of way; and unsafe track and right of way conditions endanger the health and safety of the Union's members. BMWED actively participates in regulatory, administrative and judicial proceedings to vindicate the rights of its members.

3. The FRA, created by *The Department of Transportation Act of 1966,* P.L. 89-670 (10/15/1966), is an agency as defined by 5 U.S.C. §§ 551 and 701. It is one of ten agencies of the U.S. Department of Transportation concerned with transportation.

## JURISDICTION AND VENUE

4. This action seeks to vacate a decision by the FRA on the basis that it violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331.

5. Venue lies in this court under 28 U.S.C. Section 1391(e)(1) because the FRA is headquartered in this District.

## STATEMENT OF THE CLAIM

6. FRA Track Safety Standards regulation Section 213.233 (49 CFR 213.33) requires that railroad track inspections must be performed by a person who is designated as qualified to perform track inspection under 49 CFR 213.7, which, in turn, requires that the person must demonstrate that he or she knows and understands all requirements of Section 213.7 that apply to the inspection of the track for which he or she is responsible. Track Inspectors must be able to detect deviations from those requirements, and to prescribe and take appropriate remedial actions

to correct or safely compensate for deviations from TSS requirements.

6. To perform an adequate track inspection under 213.233, all of the following items must be inspected: Roadbed (drainage and vegetation); Track Geometry (track gauge, track alignment, curves; elevation and speed limitations); Track Surface (combined track alignment and surface deviations); Track Structure (ballast, crossties, defective rails, rail end mismatch, continuous welded rail, rail joints, tie plates, rail fastening systems, switches and derails); Automotive or Railroad crossings at grade; and Right of way (trespassers, suspicious items, vandalism).

7. 49 C.F.R. 213.233 requires that visual inspections of track occur at a prescribed minimum level of frequency. Generally, tracks classified at levels 1-3, indicating track rated for lower speeds, must be visually inspected at least once a week; tracks classified at levels 4 and 5, indicating track rated for higher speeds, must be visually inspected at least twice a week (49 CFR 213.233(c)). If the track inspector finds a deviation from the TSS requirements, the inspector must <u>immediately</u> initiate remedial action (49 CFR 213.233(d)).

8. The FRA has said that "rail testing frequency is the most effective means of controlling risk" in railroad operations.

9. In performing visual inspections, a qualified track inspector is expected to look <u>simultaneously</u> for all track defects addressed in the TSS. While some defects, such as decayed ties, may be readily apparent, some track defects are more subtle, and require proper training and experience in order to be detected.

10. According to the FRA's Notice, on July 31, 2018, BNSF petitioned the Agency under 49 C.F.R. 211.51 for a suspension of certain track safety regulations related to frequency of inspection so it could conduct a pilot program to test "various types of automated track inspection methodologies".

11. The FRA's Notice stated that the test program will be conducted on approximately 1,348 miles of rail lines in Nebraska and Wyoming (the "Test Lines"), and is designed to test the use of manned and unmanned track geometry cars for track inspection as an alternative to manual visual inspections, and to test an optical visual platform to supplement manual visual inspections.

12. The tracks covered by the proposed test are Class 1, 2, 3, and 4 tracks, meaning that, under the TSS Section 213.233, the some of the tracks must be visually inspected at least once a week, and others must be inspected twice a week.

13. Under the test as approved by the FRA, frequency of visual inspections required by the TSS would be maintained for the first sixty days of the test; during the next sixty days, the frequency of the main line inspections would be maintained, but inspection of sidings would be reduced to once a month; for the next 245 days of the test, the frequency of the main line inspections would be reduced to twice monthly and inspection of sidings would be reduced to once a month.

14. According to the Notice, the FRA deemed suspension of the frequency of inspections to be "necessary" to facilitate conduct of the test program, and therefore permitted under 49 C.F.R. 211.51(a)(1).

15. The Notice provided no explanation as to why a reduction in the frequency of manual visual inspections by qualified track inspectors was found to be "necessary" to conduct of the test.

16. According to the Notice, suspension of the frequency of inspections was subject to conditions to assure safety, and therefore permitted under 49 C.F.R. 211. 51(a)(3).

17. The Notice provided no explanation as to what conditions were imposed to protect safety, or why those conditions would assure safety.

18. The Notice referred to FRA's correspondence with BNSF regarding the purported safety conditions and said the correspondence was publicly available in the FRA's docket concerning BNSF's request. The FRA's correspondence with BNSF was not publicly available in the FRA's docket as of the date the Notice was published. The FRA's correspondence with BNSF was not publicly available in the FRA's docket as of November 28, 2018.

19. The Notice did not describe the purported safety conditions attached to the suspension of the frequency of inspection regulation standard, or explain how the purported conditions would assure safety.

20. Each of the automated systems described in the Notice perform the tasks they are individually designed for, such as detection of internal rail flaws and joint bars, and identification of weaknesses in ties and fasteners. For example, a Track Geometry car can only measure track geometry (*e.g.* gauge, alignment, curve elevation), but will not find broken rails, switch anomalies, drainage problems, broken bars. The individual systems cannot detect combinations of conditions that would together present a deviation from the TSS, when none of the conditions would individually constitute a deviation.

21. The automated systems described in the Notice do not perform certain inspection functions required by the TSS regulation, such as inspection for roadbed drainage and vegetation issues; track surface deviations; track structure problems such as deficient ballast, worn and damaged crossties, and defective rails; rail end mismatches; continuous welded rail breaks; defective rail joints, tie plates, and rail fastening systems; switch problems; automotive or railroad grade crossings issues; and trespass, vandalism and suspicious bags or packages on the right of way. And the automated systems cannot perform "immediate remediation" as required by 49 CFR 213.233(d).

22. No aspect of the test proposed in the Notice precludes continued manual visual inspections of the Test Lines during the period that the automated systems are being tested. The Notice contains no finding that continued regular manual visual inspections during the testing period would interfere with or somehow adversely impact the test.

23. The Notice contains no description of the safety conditions supposedly attached to the FRA's approval of BNSF's request for suspension of the TSS regulation concerning the frequency of manual visual inspections for the Test Lines. The Notice contains no explanation as to how safety on the line will be assured during the test period.

**CAUSE OF ACTION: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

24. BMWED incorporates by reference, as if fully set forth herein, each and every allegation of paragraphs 1 through 23.

25. Section 706 of the APA provides in relevant part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

    *             *             *             *

(2) hold unlawful and set aside agency action, findings, and conclusions found to be–

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

26. Track Safety Standard regulation 49 CFR 213.233 requires manual visual track inspection of lines like the Test Lines by a qualified tack inspector at least once a week.

27. By its Notice, the FRA has allowed BNSF to operate trains on the Test Lines without complying with the TSS mandating a minimum frequency for manual visual track inspection required by 49 CFR 213.233. But the FRA has not amended or waived 49 CFR 213.233, and has not followed any APA required procedure in amending or waiving that regulation.

28. FRA has purported to act under 49 CFR 211.51, which provides for suspension of TSS regulations for conduct of a test only if suspension of the regulation is necessary for conduct of the test, and the suspension has been subject to conditions to assure continued safe operations.

29. Suspension of the TSS regulation 213.233 regarding the frequency of manual visual inspections is not necessary for the test of automated systems that BNSF seeks to conduct.

30. The suspension of regular manual visual inspections required by TSS regulation 213.233 that was authorized by the FRA in its Notice was not subject to conditions sufficient to assure continued safe operations during the period of the test.

31. Because the FRA has not complied with APA requirements for repeal or amendment of a regulation, the Agency's decision was arbitrary and capricious; and the FRA violated the APA in authorizing BNSF to reduce the frequency of manual visual inspections of the Test Lines as described in the Notice

32. Because suspension of the regulation concerning the frequency of manual visual track inspections did not was not supported by evidence substantiating the Agency's determinations that suspension of 49 CFR 213.233 was necessary for the test, and that the suspension was subject to conditions to protect safety, the FRA's action was not supported by substantial evidence and was in violation of APA Section 706.

33. Because suspension of the regulation concerning the frequency of manual visual track inspections was not supported by evidence or any explanation or rationale substantiating the Agency's determinations that suspension of 49 CFR 213.233 was necessary for the test and that the suspension was subject to conditions to protect safety, the FRA's action was arbitrary and capricious and in violation of APA Section 706.

34. Because the automated systems being tested by BNSF cannot not perform immediate remediation of track defects as required by 49 CFR 213.233(d), and the FRA did not repeal, amend, or suspend 49 CFR 213.233(d), the FRA's action was arbitrary and capricious and in violation of APA Section 706.

**REQUEST FOR RELIEF**

WHEREFORE, BMWED respectfully requests that the Court:

A. DECLARE that by suspending the requirements of 49 CFR 213.233(c) as described in its Notice, the FRA violated APA Section 706;

B.  A. DECLARE that by allowing less frequent manual visual track inspections than required by 49 CFR 213.233(c) as described in its Notice, and by substituting inspection techniques not capable of performing immediate remediation as required by 49 CFR 213.233(d), the FRA violated APA Section 706;

C. ENJOIN the FRA from permitting BNSF to reduce the frequency of manual visual inspections of the Test Lines as described in the Notice;

D. GRANT BMWED reasonable attorneys' fees and the costs of this action;

E. GRANT BMWED all other relief that the Court deems just and proper.

                          Respectfully submitted,

                            /s/ Richard S. Edelman
                          Richard S. Edelman
                          D.C. Bar No. 416348
                          Mooney, Green, Saindon, Murphy & Welch, P.C.
                          1920 L Street NW, Suite 400
                          Washington, DC  20036
                          (202) 783-0010
                          Redelman@MooneyGreen.com